**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **JOSE ARANA YEPEZ**<br><br>Plaintiff,<br><br>vs.<br><br>**INNOVATTEL, LLC.; ABC INSURANCE COMPANIES, DEF UNKNOWN DEFENDANTS**<br><br>Defendants. | CIVIL NO.<br><br>RE: TITLE VII, NATIONAL ORIGIN AND ADEA EMPLOYMENT DISCRIMINATION;<br><br>**REQUEST FOR SUMMARY PROCEEDINGS UNDER 42 U.S.C. § 2000e-5(f)(5)**<br><br>PLAINTIFF DEMANDS TRIAL BY JURY AND PUNITIVE DAMAGES |

# C O M P L A I N T

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiff José A. Arana Yepez ("Arana"), through his undersigned counsel, and very respectfully **ALLEGES, SOLICITS** and **PRAYS**:

### I.   NATURE OF THE ACTION AND JURISDICTION

1. This is an action for damages arising from unlawful employment discrimination, retaliation, and breach of contract. Plaintiff José Arana Yepez ("Arana"), a highly compensated executive with Innovattel, LLC ("Innovattel"), was systematically demoted, denied compensation, and ultimately terminated due to his age (66) and Peruvian national origin, in violation of Title VII and the ADEA. Innovattel further manipulated financial figures to reduce Arana's entitled profit-sharing, while fully compensating younger, non-Peruvian employees under equivalent agreements, in breach of its contractual obligations.

2.	As such, plaintiff Arana invokes this Honorable Court's federal question subject matter jurisdiction under 28 U.S.C. § 1331 for this action seeking compensatory damages, equitable and injunctive relief, costs and attorney's fees brought forth pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the Age Discrimination and Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"), as a result of Defendant Innovattel, LLC.'s ("Innovattel") unlawful and willful unlawful employment practices (national origin and age discrimination), which lead to his employment termination and violation of his civil rights.  Such discriminatory acts caused emotional, mental, and severe economic damages for Arana.

3.	Plaintiff Arana further invokes this Honorable Court's diversity of citizenship jurisdiction under 28 U.S.C. § 1332, as he is a citizen and resident of the State of Washington.

4.	Defendant Innovattel is considered a citizen and resident of the Commonwealth of Puerto Rico because, as a corporation, it was organized under the laws of the Commonwealth of Puerto Rico and its principal place of business is located in San Juan, Puerto Rico.  Innovattel's main corporate offices are located at 416 Ponce de León Avenue, Union Plaza Building Suite 1602, San Juan, Puerto Rico.

5.	There is complete diversity of citizenship among the parties in this case.

6.	Plaintiff Arana's claims exceed the monetary amount of $75,000, exclusive of interest and costs.

7.	Plaintiff Arana further invokes this Honorable Court's supplemental jurisdiction under 28 U.S.C. § 1367 to hear and decide the following claims arising under the Commonwealth of Puerto Rico's laws invoked herein because such claims arise from

the same nucleus of operative facts giving rise to Arana's claims under federal law. The Honorable Court's supplemental and pendent party jurisdiction is hereby invoked to hear and adjudicate their claims against all named party defendants arising under the following Puerto Rico Laws: Act No. 100 of June 30, 1959, 29 L.P.R.A. §§ 146, *et seq*.; and Articles 1233,1536, and 1540 of Puerto Rico's Civil Code, 31 L.P.R.A. §§ 10801, 10805.

8. On or about December 29, 2023, Arana timely filed an Employment Discrimination and Retaliation Charge with the Equal Employment Opportunity Commission ("EEOC"), Case No. 515-2024-0051C claiming national origin and age discrimination against his former employer Innovattel.

9. On January 10, 2025, the EEOC issued the corresponding Notice of Right-To-Sue so that Arana could continue to pursue his employment discrimination claims before this Honorable Court. On such date, the Notice of Right-To-Sue was received by Arana.

10. In a timely manner after receipt of the above-mentioned Right-To-Sue Notice, Plaintiff Arana files the present federal lawsuit claiming violations to Title VII, ADEA and the Commonwealth of Puerto Rico's laws cited too herein.

11. Arana seeks redress for those severe damages he suffered and continues to suffer as a result of Innovattel's unlawful employment discrimination on the basis of his national origin and age.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) (1), (2). Venue is proper in this district because all of the unlawful employment practices alleged herein and events or omissions giving rise to this civil action occurred in this judicial district of Puerto Rico. 28 U.S.C. § 1391(b).

13. Arana hereby specifically invokes 42 U.S.C. § 2000e-5(f)(5) to request that his Title VII claims in this case to be in every way expedited.

## II. THE PARTIES

14. Arana is a male citizen of the United States of America, of legal age, married and resident of the State of Washington.

15. On April 28, 1955, Arana was born in Ciudad de Pacasmayo, in the Department of La Libertad, in Peru. As such, Arana is Peruvian and within this protected national origin group as established by Title VII and is further within the protected age group as established by the ADEA.

16. At all relevant times of the facts alleged in this Complaint, Arana was an "employee" within the definition of such terms as defined by Title VII, 42 U.S.C. § 2000e(f) and by the ADEA, 29 U.S.C. § 630(f). Arana was also an "employee" within the definition of such terms as provided by the Commonwealth of Puerto Rico laws that have been invoked herein.

17. Defendant Innovattel is a mobile telecommunications infrastructure company that develops, constructs, and maintains mobile telecommunications infrastructures, namely towers, throughout Latin America and the Caribbean, infrastructures that are "packaged' into legal vehicles and then sold to third party investors.

18. Plaintiff Arana's claims exceed the monetary amount of $75,000, exclusive of interest and costs.

19. Innovattel is considered a "person" within the meaning of such term as provided by Title VII, 42 U.S.C. § 2000e(a).

20. At all times relevant to this Complaint, Innovattel was engaged in an "industry affecting commerce" within the meaning of such term as provided by Title VII, 42 U.S.C. § 2000e (h).

28. At all times relevant to this Complaint, Innovattel was an "employer" within the meaning of such term as provided by Title VII, 42 U.S.C. § 2000e (b); by the ADEA, 29 U.S.C. § 630(b); and (c) the laws of the Commonwealth of Puerto Rico that have been invoked herein.

29. At all times relevant to this Complaint, Innovattel employed fifteen (15) or more employees.

30. At all times relevant to this Complaint, Innovattel employed Arana. As such, Innovattel was Arana's employer.

31. Defendants ABC Insurance Companies have insurance policies which at all times relevant hereto, were in full effect and cover the liabilities and/or unlawful acts which were committed by the defendants herein mentioned.

32. Plaintiff Arana is using the fictitious names of ABC Insurance Companies because at this time he does not know the real names of such insurance companies. Once the real names become known, Arana will substitute those fictitious names with the real names of such party defendants.

33. Defendants DEF are other parties that have engaged in unlawful acts against Arana. Plaintiff Arana is using the fictitious names of DEF because at this time he does not know the real names of such party defendants. Once the real names of these defendants become known, Plaintiff Arana will substitute those fictitious names with the real names of such party defendants.

34. Defendant Innovattel received actual knowledge of Arana's administrative charges filed claiming employment discrimination and retaliation, which were administratively filed before the EEOC.

35. All Defendants have jointly participated in continuous acts of unlawful employment discrimination against Arana on account of his age and national origin.

36. All defendants are jointly liable for the damages caused to Plaintiff Arana.

### III.  FACTUAL NARRATIVE COMMON TO ALL CLAIMS

37. On or about May 10, 2013, Arana commenced working for Innovattel.

38. When Arana first started working for Innovattel, he occupied the position of Director and Regional Vice President of Operations within his employer's Administration Department.  At such time, Arana earned a $12,000.00 monthly salary under an employment contract with Innovattel dated May 10, 2023.

39. As Vice President, Arana duly performed all the duties inherent to such position, acting mostly by travelling from his former domicile in California to the various Latin American and Caribbean markets to be entered and developed by Innovattel; and was entitled to fringe benefits.  As part of his employment compensation, both Innovattel and Arana conveyed to a profit sharing agreement (which Innovattel intentionally failed to comply with) over certain construction projects that he worked on that were located in Ecuador, as well as any new markets where Innovattel or its subsidiaries would enter after its success in Ecuador, namely, Peru, Colombia, Argentina, Paraguay, Chile and the Dominican Republic.

40. On or about November 2, 2015, Innovattel and Arana entered into a Profit-Sharing Agreement whereby the parties were to share the profit realized from their

"project", which included the deployment of telecommunication sites and instrastructure, to include monopole, rooftop and self-supporting towers, as well as the acquisition of existing sites, with a view to their eventual resale. The undertaking of said "project" started with Innovattel's new operations in Ecuador pursuant to the terms of such Profit-Sharing Agreement, which was not a qualified benefit plan under ERISA, but a contractual agreement executed not only between these two parties, but also amongst Defendant and other employees working in the Latin-American markets.

41. Arana's contractual duties under this Profit-Sharing Agreement included participating in the construction, development and maintenance of telecommunication towers in those Latin American nations that Innovattel chose to make an initial entrance, and conduct business in. As part of his duties, Arana lead the operations team in charge of building more than 1,000 telecommunications towers during a term of no more than four (4) years. Throughout such period of time, Arana duly complied with his contractual duties.

42. Both parties agreed in the Profit-Sharing Agreement that Arana would be entitled to eighteen percent (18%) of the net profits that were generated by the sale of the "packages" upon the satisfactory completion of the stated telecommunications towers in the different markets.

43. During the years 2015, 2016 and 2019, Innovattel reported to Arana inconsistent profits from the sales of certain telecommunication towers' "packages" in Ecuador amounted to $4,251.803; $1,541,568 and $1,874,968, respectively, for a total of $7,688,399.00 in such market, without considering the sales generated in Argentina,

Dominican Republic, Colombia, Panama, Peru and Paraguay, where Arana also participated and was entitled to participate in the profits.

44. As to the profits owed by Innovattel to Arana just for the Ecuador market they should amount to $1,380,301.02, excluding interest, as per the unofficial numbers made available to Arana by Defendant, but to be confirmed with Defendant's financials.

45. Innovattel unlawfully discriminated against Arana due to his age and national origin, because other Innovattel employees who were younger than him and not of Peruvian origin, including the Ecuador Manager, did receive their profit sharing, but Arana was discriminatorily denied his profit shares.

46. Innovattel knowingly engaged in financial misrepresentation by reporting artificially lower revenue figures when calculating Arana's profit share, materially reducing his entitled profits. Meanwhile, it used the actual, higher revenue figures to calculate Ecuador's General Manager's compensation under an equivalent profit-sharing agreement. These financial manipulations not only constitute a breach of contract but also fraudulent misrepresentation. Plaintiff Arana seeks full forensic accounting of Innovattel's financial records to uncover these discrepancies and verify the full extent of the underpayment. On or about March 1, 2021, Arana ceased to be an employee of Innovattel as his employment contract was terminated by Innovattel due to his age and national origin.

47. Arana's termination of employment was purportedly due to a corporate reorganization. However, Innovattel's alleged reorganization was pre-textual because other younger, less senior employees, who were not Peruvian in origin, and no longer owed profits under the company's customarily profit share agreements, were illegally

retained by Innovattel and these employees continued performing Arana's prior job functions as Vice President of Operations, a position which Arana had been unlawfully demoted to when Mr. Juan Cueria was appointed President of Operations. This personnel transaction violated Arana's terms and conditions of employment due to his age, as Cueria is younger and possessed less seniority than Arana, with no expertise in operations, less so in international operations throughout Latin America, but rather, an employee with a financial background.

48. Another reiterated discriminatory event based on Arana's age and national origin occurred in Innovattel's operations in the Dominican Republic and Argentina, where a younger and Argentinian employee, who was previously under Arana's direct supervision, was appointed to perform his supervision and job responsibilities in these markets. As part of the disparate treatment scheme concocted by Innovattel, Arana was further deliberately excluded from executive meetings where Juan Cueria, as the newly appointed President of Operations, discussed market reports, financial and operation matters of Innovattel, meetings that previously included Arana. These unlawful age and national origin discriminatory personnel actions perpetrated by Innovattel had but one purpose, to negatively affect Arana's job performance in a pretextual attempt to justify his employment termination. Arana complained of these unlawful personnel actions to Innovattel's upper management, but these grievances not only fell upon deaf ears, but led to the ultimate retaliatory act, his illegal termination of employment, and lack of payment of his accrued profits.

49. Arana's unlawful termination of employment further violated his statutory rights under the Older Workers Benefit Protection Act (OWBPA), which amended the ADEA, as he was never informed by his former employer of his rights under such statute.

50. Throughout his employment tenure, Innovattel never informed Arana verbally or otherwise of his rights under the ADEA or Title VII. His employer never notified him personally or by email of the legally mandated and required Equal Employment Opportunity Commission's ("EEOC") notices that are mandatorily required to be posted at his employment site or notified Arana in writing to advise him of his rights under the ADEA or Title VII, including the administrative procedures for the filing of employment discrimination charges to claim violations of such federal laws. Innovattel deliberately chose not to comply with these procedural notice requirements with Arana.

51. Arana first became aware of his statutory rights under the ADEA and Title VII, when he hired his legal counsel on November 3, 2023.

52. Innovattel further violated Arana's rights under the Older Workers Benefit Protection Act (OWBPA) by failing to provide him with statutorily required disclosures before unlawfully terminating his employment. No written notice, waiver, or disclosure of his rights was provided, in direct violation of 29 U.S.C. § 626(f).

53. Throughout his tenure at Innovattel, Arana's primary work location was in Latin American markets, including Ecuador, Peru, Argentina, and the Dominican Republic. His role required him to oversee the expansion, construction, and operational oversight of telecommunications projects in these countries.

54. Innovattel deliberately created intolerable working conditions that no reasonable employee could be expected to endure. By reclassifying Arana as an

independent contractor, cutting his compensation, unilaterally amending his profit-sharing agreements, and restricting him to unprofitable markets, Innovattel orchestrated an attempted constructive discharge in violation of the ADEA and Title VII. The company's intent was clear: to coerce Arana into resigning rather than formally terminating him, in a calculated effort to evade liability under federal employment laws and deprive him of both his accrued and future profit-sharing entitlements. On February 28, 2021, Arana was unlawfully terminated from his employment.

55. After Arana was unlawfully terminated from his employment due to his age and national origin by Innovattel, he continued under a Contract for Professional Services, as a consultant with Innovattel. Under this Contract for Professional Services, Arana was assigned Innovattel's projects in Argentina and the Dominican Republic undertaking the supervision of metrics and construction requirements, compliance with construction design, oversight of contractors' evaluation, prices, supporting the revision of construction budgets, costs estimates, review of invoice payments, among other contractual duties.

56. For the above detailed Independent Contractor duties, Arana was paid $5,000 a month, substantially lesser compensation than what he had previously earned for similar functions (even after his demotion). Arana *de facto* continued as an employee unlawfully classified as an "Independent Contractor." Arana grieved about this personnel transaction as he could not be considered both as an Independent Contractor and an employee simultaneously. In so doing, Arana effectively engaged in statutorily protected activity and was subsequently, retaliated against due to his participation in such activity.

57. Along with this Contract for Professional Services, and *sui generis* simultaneous classification as both as Independent Contractor and employee, Innovattel

further communicated a unilateral amendment to the Profit-Sharing Agreement with Arana. Under this amended agreement, the percentages of the net profits generated by the sale of telecommunication towers which were completed as of March 1, 2021, were lowered. For example, for those towers built in Argentina, the profit-sharing percentage was lowered and fixed at Twelve Percent (12%); the already accrued profits for Ecuador were further lowered and set at Fifteen Point Five Percent (15.5%); Paraguay was lowered and fixed at Fifteen Percent (15%) and Dominican Republic was lowered and fixed at Fourteen Percent (14%).

58. With these new conditions, Innovattel was in fact attempting to cause Arana's constructive dismissal through an unlawful forced resignation, which would have been his only reasonable alternative. However, Arana continued working and did not resign, as he had no other option for gainful employment at sixty-six (66) years of age, while also financially supporting his minor child at the time, as the sole provider for his family. The severe economic impact of these conditions, coupled with Innovattel's continued failure to meet its obligations, ultimately forced Arana to sell his home and relocate to a smaller residence in a different state.

### III. FIRST CAUSE OF ACTION
### (TITLE VII: National Origin Discrimination)

59. Plaintiff Arana re-alleges each preceding allegation as if fully set forth herein and incorporates them hereto by reference.

60. Defendant Innovattel has willfully violated Title VII's provisions by engaging in discriminatory employment practices against Arana on account of his national origin.

61. Arana hereby requests back pay, front pay, reinstatement and that he be compensated for his severe economic and emotional damages. Plaintiff Arana demands compensation for these damages in an amount of not less than $ 350,000.00.

## IV.  SECOND CAUSE OF ACTION
### (ADEA: Age Discrimination)

62. Plaintiff Arana re-alleges each preceding allegation as if fully set forth herein and incorporates them by reference hereto. Defendant Innovattel has further violated the ADEA because it willfully discriminated against Arana due to his age negatively affecting his terms and conditions of employment, when he was substituted with younger and less senior employees.

63. Plaintiff Arana is entitled to compensatory damages, back pay, front pay and reinstatement. Plaintiff Arana has suffered considerable economic and personal damages as a result of Defendant Innovattel's willful conduct, including the discrimination he was subjected to. Arana demands compensation for these damages in an amount of not less than $350,000.00.

64. Plaintiff Arana prays that judgment be entered on his behalf and against Defendant Innovattel and that he be awarded all relief available to him by law.

## V.  THIRD CAUSE OF ACTION
### (Violation to Puerto Rico Laws Nos. 115, 100, and Arts. 1536, 1540 of Puerto Rico's Civil Code)

65. Plaintiff Arana re-alleges each preceding allegation as if fully set forth herein and incorporates them by reference hereto.

66. Defendant Innovattel has violated Arana' rights secured under Puerto Rico Acts Nos. 115, 100, and Articles 1536 and 1540 of Puerto Rico's Civil Code previously cited herein.

67. Plaintiff Arana is also entitled to compensatory damages, back pay and front pay. Plaintiff Arana suffered economic and personal damages because of Defendants' unlawful retaliatory conduct after he complained about the age and national origin discrimination he was the victim of, and lack of payment of his accrued profits.

## VI.   FOURTH CAUSE OF ACTION
**(Breach of the Parties' Profit-Sharing Agreement; Violation of Puerto Rico's Civil Code)**

68. Plaintiff Arana re-alleges each preceding allegation as if fully set forth herein and incorporates them by reference hereto.

69. Plaintiff Arana fully and duly complied with his contractual duties with Innovattel.

70. Defendant Innovattel knowingly engaged in financial fraud and bad faith contract manipulation by intentionally using different financial figures when calculating Arana's 18% share versus those used for younger employees, such as Ecuador's General Manager's. By misrepresenting revenues, Innovattel not only breached the Profit-Sharing Agreement but also engaged in deceptive accounting practices designed to deprive Arana of at least hundreds of thousands in entitled compensation. Plaintiff demands full financial discovery to verify the full extent of the underpayment and further punitive damages for willful misrepresentation.

71. In relation to Arana's breach of contract claim resulting from Innovattel's failure to comply with its obligations under the parties' then applicable Profit-Sharing

Agreement, the following table demonstrates Arana's loss of profits and the discrepancies in the calculations used by Innovattel:

| Portfolio | Revenue Reported to Arana ($) | Profit Reported to Arana ($) | Profit Used for Ecuador's General Manager's ($) | Arana's 18% Share Based on Reported Profit ($) | Corrected 18% Share Based on Ecuador's General Manager's Profit ($) | Difference Owed to Arana ($) |
|---|---|---|---|---|---|---|
| Ecuador 1 | 18,927,014.89 | 4,251,803.00 | 6,169,427 | 765,324.54 | 1,110,496.86 | 984,509.57 |
| Ecuador 2 | 29,101,310.00 | 1,541,568.00 | 2,449,362.00 | 277,482.24 | 440,885.16 | 440,885.16 |
| Ecuador 3 | TBD | 1,874,968.00 (Projected) | Not Available | 337,494.24 | TBD | TBD |

**Analysis of Financial Discrepancies:**

**Ecuador 1:** Arana's whole profit should have been calculated based on $6.17M, the same profit figure used for Ecuador's General Manager's calculation and Arana's initial partial and incomplete payment, but was instead, unjustifiably based on only $4.25M, resulting in a significant underpayment.

Furthermore, Arana was only paid $125,987.29, significantly below what was due to his recognized initial payment of USD $202,678.21. Nonetheless, said partial payments both to Arana and Ecuador's General Manager's show not only Innovattel's manipulation of financial information, but also the existence, enforceability, and Defendants' recognition of the debt and the specific terms of the company-wide profit-sharing agreements signed with key executives and key collaborators.

- Difference owed to Arana: $984,509.57 (18% of Ecuador's General Manager's reported $6.17M profit, minus partial payments already received by Arana).

- Discrepancy in Financial figures: $345,172.32 (shortfall between what was reported to Arana and used for Ecuador's General Manager's).

- Further financial discovery required to determine full underpayment, thus marked as TBD.

**Ecuador 2:** Arana's profit should have been calculated based on $2.44M, the same profit figure used for Ecuador's General Manager's calculation and payment, but was instead based on only $1.54M, resulting in a significant underpayment. Said payments to Ecuador's General Manager further demonstrate Innovattel's financial misrepresentation, as well as the existence, enforceability, and Defendants' recognition of the debt and company-wide profit-sharing agreements signed with key executives and key collaborators.

- Difference owed to Arana: $440,885.16 (full 18% of Ecuador's General Manager reported $2.44M profit).

- Discrepancy in Financial figures: $163,402.92 (shortfall between what was reported to Arana and used for Ecuador's General Manager's).

- Nonetheless, financial discovery shall ratify these values.

**Ecuador 3**: Innovattel has only projected the $1.87M profit, and further verification is needed to determine the actual underpayment.

- Marked as TBD pending financial discovery.

**Total Confirmed Underpayment:**

- Confirmed debt for Ecuador's 3 portfolios: $1,762,888.97.
- Further discrepancies expected pending full financial disclosure.
- Interest owed on delayed payments must also be accounted for.
- Further financial discovery is required to determine if additional profit is owed to Arana from other markets, including the Dominican Republic portfolio, which, to his knowledge, has recently been sold. Any such earnings must be accounted for under Arana's entitlement to the Profit-Sharing Agreement.

**Evidence of Innovattel's Systematic Financial Manipulation:**

The discrepancies in reported revenues used for Arana's profit-sharing calculations compared to those used for younger employees, such as Ecuador's General Manager's, indicate a deliberate and systematic financial misrepresentation. Innovattel's refusal to compensate Arana based on accurate profit figures—despite compensating other employees—constitutes not only a breach of contract but also evidence of discriminatory financial practices based on Arana's age and national origin.

These discrepancies were not the result of clerical errors or accounting variances, but rather part of a broader scheme to marginalize, demote, and ultimately force Arana to sign documents, and ultimately, out of the company by:

- Unilaterally lowering the figures used for his profit-sharing calculations, and then deliberately not paying him nonetheless, while paying other employees.

- Consolidating markets in a way that strategically diminished his accrued and previously recognized entitlements.
- Applying different accounting methodologies for younger, non-Peruvian employees.

72. In view of the foregoing, Innovattel owes the amount of not less than $1,425,394.73, excluding interest, to Arana.

**WHEREFORE**, premises considered, Plaintiff Arana prays that this Honorable Court enter Judgment against defendants and grant Plaintiff Arana the following relief:

(a) An award of compensatory damages, including but not limited to backpay and front pay and prejudgment interests, of not less than $700,00.00;

(b) An award of double compensatory damages under Acts Nos. 115, and 100.

(c) An award of costs and reasonable attorney's fees; and punitive damages;

(d) An award for punitive damages;

(e) An award for contractual damages under Puerto Rico's Civil Code in the amount of $1,425,394.73.

(f) Any other and further relief, which this Honorable Court may deem just, and proper and

(g) A trial by jury.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 21st day of March 2025.

**/s JOSE G. FAGOT DIAZ, ESQ.**
**DESPACHO LEGAL DORNA-LOMPART**
**USDC PR No. 204112**
**Attorney for Plaintiff**
1353 Luis Vigoreaux Ave.
PMB 805
Guaynabo, PR 00969
Tel:(787) 367-8702
email: jgf@fagot-law.com
josegabrielemilio@gmail.com